# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 19 2017, 5:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jeffery A. Earl
Danville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Marjorie Newell
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of O.S. (Child), | June 19, 2017 |
| A Child in Need of Services | Court of Appeals Case No. 32A05-1701-JC-50 |
| and, | Appeal from the Hendricks Superior Court |
| R.S. (Mother), | The Honorable Karen M. Love, Judge |
| *Appellant-Respondent,* | Trial Court Cause No. 32D03-1606-JC-63 |
| v. | |
| The Indiana Department of Child Services, | |



*Appellee-Petitioner.*

**Barnes, Judge.**

## Case Summary

R.S. ("Mother") appeals the trial court's order finding her daughter, O.S., to be a child in need of services ("CHINS"). We affirm.

## Issue

Mother raises one issue, which we restate as whether the evidence is sufficient to prove O.S. is a CHINS.

## Facts

O.S. was born in June 2012 to Mother and D.S. ("Father"). Although Mother and Father were married, they separated, and O.S. lived with Mother and had parenting time with Father. At some point, Father told Mother that he had touched O.S. inappropriately, that he had sexual fantasies involving children, and that he wanted to have a threesome with O.S. and Mother; Mother did not inform the authorities. Mother claimed that she took O.S. to a doctor when she was three years old to see if O.S. had been molested, that she questioned O.S.,

and that she called a sex abuse hotline but did not receive a return phone call. Mother and O.S. were living with Mother's boyfriend, who was abusive to Mother, and in approximately May 2016, Mother and O.S. moved in with Father and his roommate. At that time, four-year-old O.S. had a severe speech delay and was able to say only twenty to thirty words. However, Mother had not sought any speech therapy for O.S.

[4]     In June 2016, the Department of Child Services ("DCS") received a report that Father told a friend that he could not wait for O.S. to start her period so that he could have sex with her. Police officers interviewed Father, and he admitted to molesting O.S. He also admitted that he had sexual fantasies about children and that he told Mother about his fantasies. Mother admitted that she was aware Father had touched O.S. inappropriately but that she still allowed Father to have unsupervised contact with O.S. O.S. was removed from Mother's care and placed with paternal grandmother. Father was convicted of Level 4 child molesting, and he is serving a sentence in the Department of Correction.

[5]     DCS filed a petition alleging that O.S. was a CHINS based on Indiana Code Section 31-34-1-1 (inability, refusal, or neglect of a parent to supply the child with necessary food, clothing, shelter, medical care, education, or supervision), Indiana Code Section 31-34-1-2 (an act or omission of a parent seriously endangering the child's physical or mental health), and Indiana Code Section 31-34-1-3 (child is the victim of a sex offense). Father admitted that O.S. was a CHINS, but Mother contested the allegations and a date for a fact-finding hearing was set.

[6]     Mother struggled to understand why O.S. was removed from her care. Shortly after O.S. was removed from Mother's care, the guardian ad litem ("GAL") attended a visitation between Mother and O.S. that paternal grandmother was supervising. At the visit, Mother twice told O.S. that she needed to "tell the truth so [she] could come home. . . ." Tr. p. 117. When the GAL told Mother not to talk about those things, Mother became angry. At the end of the visit, Mother said, "I'm so messed up I don't even know why I'm here." *Id.* at 118. DCS referred Mother for supervised visitations and voluntary home-based care to assist her with stable housing and employment. When Mother indicated that she was depressed and anxious, DCS made a referral for a home-based therapist and a neuropsychological evaluation. Mother did not participate in a neuropsychological evaluation, but she did participate in therapy. The therapist testified that Mother was making progress and recommended that she continue therapy.

[7]     Between June 2016 and October 2016, Mother worked at a traveling carnival and at a fast food restaurant. She moved five times in five weeks, and it was difficult to maintain contact with her. At one point, Mother moved in with a new boyfriend a week after meeting him, and he did not pass the DCS background check. DCS informed Mother that "it would be incredibly difficult to reunify [O.S.] with her while she was living with [the boyfriend]." *Id.* at 105.

[8]     At a fact-finding hearing in October 2016, Mother had divorced Father. O.S. was still placed with paternal grandmother, who had started O.S. in speech therapy. O.S. was also participating in individual counseling. The DCS case

manager testified that coercive intervention of the court was necessary to help Mother with stability, parenting skills, and learning to protect O.S.

[9] In November 2016, Mother requested unsupervised parenting time. At an evidentiary hearing on the motion, Mother's therapist testified that Mother continued to blame Father for O.S.'s removal, that Mother struggled to take responsibility for O.S.'s removal, and that she was not sure Mother "cognitively grasps all of the needs that the child has to keep her safe." *Id.* at 154. The home-based case management worker testified that they had closed the referral due to Mother's noncompliance. He continued, however, supervising Mother's visitations with O.S. Mother sometimes came to the visits very angry at the visitation supervisor and DCS. Sometimes she could calm down, but other times, they had to end the visit due to Mother's inappropriate behavior. Mother also got angry with the DCS case manager and cursed at him. DCS objected to Mother having unsupervised visitations and recommended therapeutic visitations.

[10] The trial court found that O.S. was a CHINS. At the dispositional hearing, the trial court ordered Mother to participate in a parenting assessment, therapeutic visitations, home-based case management services, individual counseling, and a neuropsychological evaluation. Mother now appeals.

## Analysis

[11] Mother challenges the trial court's finding that O.S. is a CHINS. "A CHINS proceeding is a civil action; thus, 'the State must prove by a preponderance of

the evidence that a child is a CHINS as defined by the juvenile code.'" *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012) (quoting *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010)). We neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the trial court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the trial court was clearly erroneous. *Id.*

[12] "There are three elements DCS must prove for a juvenile court to adjudicate a child a CHINS." *Id.* DCS must first prove the child is under the age of eighteen. *Id.* DCS must then prove that at least one of eleven different statutory circumstances exists that would make the child a CHINS. *Id.* Finally, "in all cases, DCS must prove the child needs care, treatment, or rehabilitation that he or she is not receiving and that he or she is unlikely to be provided or accepted without the coercive intervention of the court." *Id.*

[13] Here, the trial court found O.S. to be a CHINS based on Indiana Code Section 31-34-1-1 (inability, refusal, or neglect of a parent to supply the child with necessary food, clothing, shelter, medical care, education, or supervision), Indiana Code Section 31-34-1-2 (an act or omission of a parent seriously endangering the child's physical or mental health), and Indiana Code Section 31-34-1-3 (child is the victim of a sex offense). Each basis also required DCS to prove that O.S. needed care, treatment, or rehabilitation that she was not receiving and that she was unlikely to be provided or accepted without the coercive intervention of the court. The trial court found that coercive intervention of the court was necessary and made the following findings:

17.  Mother did not protect [O.S.] from Father.  Mother does not see red flags in others that place [O.S.] at risk for sexual abuse.

18.  The coercive intervention of the Court is necessary so Mother can receive the counseling and parent skills training so she can recognize risks to [O.S.'s] physical and emotional safety that others present and so Mother can learn how to actually protect [O.S.] in the future.

* * * * *

20.  Mother needs counseling, sex abuse education and training to recognize risks to [O.S.] and ways to mitigate those risks.  Mother will not receive the education and skills training she needs without the coercive intervention of the Court.  The Court does not believe Mother will engage in services without Court intervention.

* * * * *

28.  Mother does not have stable housing.  While the case was pending, Mother continued to live with her boyfriend even though she knew the man would not pass the DCS background check.  This is the second example of Mother putting her need for housing with a man ahead of [O.S.'s] need for safety.  If DCS and the Court were not involved [O.S.] would be tagging along with Mother as Mother moves in and out of various houses.  Currently Mother does not have the ability [to] recognize warning signs that a person Mother is attracted to may be a safety threat to [O.S.].  Mother needs help to recognize warning signs and how to protect [O.S.].  Mother needs help to achieve some

financial stability so Mother is not desperate to move in with anyone who will let her and [O.S.] live with them.

\* \* \* \* \*

32. The coercive intervention of the Court is necessary to assure that Mother receives the services she needs so she can protect [O.S.] when she and [O.S.] are reunited.

\* \* \* \* \*

35. Without the coercive intervention of the Court Mother will not receive the services she needs to learn how to protect [O.S.] in the future.

Appellant's App. Vol. II pp. 16-19.

[14] On appeal, Mother argues that, prior to O.S.'s removal, she took steps to "verify whether a molestation had occurred" and to protect O.S from Father. Appellant's Br. p. 10. According to Mother, she questioned O.S., took O.S. to a doctor, and contacted a sex abuse hotline. She also argues that she attempted to ensure that Father's roommate monitored interactions between Father and O.S. and that she fully cooperated with authorities. She divorced Father and participated in home-based case work and therapy. Mother also argues that the counseling and speech therapy were provided by paternal grandmother, not DCS referrals, and that she would continue with the therapy.

DCS presented evidence that Mother was aware that Father had molested O.S.; in fact, Father admitted it to Mother. Despite his admission, Mother continued to allow O.S. to visit with Father and did not report the molestation to the authorities. Although she claims that Father's roommate was monitoring them, O.S.'s bed was in Father's bedroom, and his roommate had a separate bedroom. Shortly before O.S. was removed from Mother's care, Mother and O.S. moved in with Father because they did not have housing, which allowed Father even greater access to O.S. At the time of the fact-finding hearing, Mother did not have stable employment or housing. She repeatedly moved in with men that she had recently met. Although she was participating in services offered by DCS, she still struggled to understand why O.S. was removed from her care. As for O.S.'s therapies, Mother was aware that four-year-old O.S. had a significant speech delay but had not arranged for her to receive any treatment for the delay. Regardless of whether paternal grandmother or DCS arranged for the treatment, the point is that Mother did not do so and did not protect O.S. from Father. The trial court's findings that coercive intervention of the court was necessary are not clearly erroneous.

## Conclusion

The trial court properly found that O.S. was a CHINS. We affirm.

Affirmed.

Baker, J., and Crone, J., concur.